Constantina SZELIGA, Plaintiff, Appellant,

v.

GENERAL MOTORS CORPORATION, et al., Defendants, Appellees.

No. 83–1336.

United States Court of Appeals, First Circuit.

Argued Jan. 3, 1984.

Decided March 5, 1984.

John Silvia, Jr., with whom Long & Silvia, Fall River, Mass., was on brief, for plaintiff, appellant.

Edward P. Leibensperger, with whom Nelson G. Apjohn, and Nutter, McClennen & Fish, Boston, Mass., were on brief, for General Motors Corp.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* Senior District Judge.

* Of the District of Rhode Island, sitting by designation.

BOWNES, Circuit Judge.

Plaintiff-appellant Constantina Szeliga appeals from a jury verdict finding no breach of warranty by defendant-appellee General Motors Corporation. Szeliga brought a products liability action against General Motors [1] for injuries sustained in a single car accident on August 2, 1976. Liability was alleged on the basis of negligence and breach of warranty. At the close of plaintiff's case, the district court granted defendant's motion for directed verdict on the negligence count. The case went to the jury on the issue of breach of warranty, and it found that defendant was not liable.

There is one issue on appeal, whether the district court committed reversible error by allowing two movie films made by General Motors to be shown to the jury. Appellant alleges two reasons for finding error, that the showing of the films was unduly prejudicial and constituted unfair surprise.

## I.

The facts are simple. Plaintiff's car went off the road, struck a cement culvert and finally came to a stop in a group of trees. Plaintiff claimed that the accident happened because the left front wheel fell off due either to negligent assembly or defective design and construction. General Motors took the position that the car went off the road because of Szeliga's careless driving and that the wheel was torn off when the left front of the car hit the cement culvert. The liability part of the trial was in effect a battle between experts.[2]

General Motors' expert, James Tomlinson, an automotive expert, used the two films to illustrate why, in his opinion, the impact with the cement culvert caused the wheel to be torn off the car. In the films, a wheel which had been attached to an axle with the standard lug and nut arrangement was mounted on a wagon. The wagon was propelled along a track at high speed until the wheel struck a concrete block barrier. As a result of the impact, the wheel was peeled off the axle over the lug nuts. This illustrated Tomlinson's testimony that it was the impact, not the loss of lug nuts that caused the wheel to leave the axle. The two films showed two different runs of the wagon and wheel assembly.

## II.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403. The question of permitting the showing of a motion picture film is one for the sound and broad discretion of the district court. *Johnson v. William C. Ellis & Sons Iron Works,* 604 F.2d 950, 958 (5th Cir.1979). In assessing the admissibility of evidence, "[e]ach case must be judged under its own particular facts taking into account the specific purposes for which this type of evidence is submitted." *Robbins v. Whelan,* 653 F.2d 47, 49–50 (1st Cir.), cert. denied, 454 U.S. 1123, 102 S.Ct. 972, 71 L.Ed.2d 110 (1981).

The relevancy of the films to defendant's theory of causation cannot be disputed. They were not offered as a re-creation or representation of how the accident actually happened. The films depicted an experiment illustrating Tomlinson's theory of the cause of the accident. They were an aid to the jury's understanding of his testimony. Dissimilarities between experimental and actual conditions affect the weight of the evidence, not its admissibility. *Id.* at 49.

Before the films were shown to the jury, the district court screened them and conducted an extensive voir dire on the tests depicted. The court fully and carefully instructed the jury regarding their function in the case. The district court did not abuse its discretion in finding that the probative value of the films outweighed any

---

1. Elliot Buick, Inc., the Buick dealer from whom Szeliga purchased the car was also a defendant. Prior to the verdict, Elliot Buick and Szeliga entered into an agreement for judgment.

2. The wheel itself was not an exhibit; by the time Szeliga realized its importance, it had disappeared.

prejudice they might have. *See Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co.,* 257 F.2d 93, 98–99 (10th Cir.1958); *Zurzola v. General Motors Corporation,* 69 F.R.D. 469, 473 (E.D.Pa.1975).

Appellant's claim of unfair surprise is based on defendant's failure to list the films as potential exhibits in its pretrial memorandum contrary to the district court's pretrial order. There is a question as to whether the films were required to be listed because defendant used them as a chalk to illustrate its expert's testimony, not as formal exhibits. We pass that issue because it is clear that the showing of the films was a matter well within the trial court's discretion. It would be presumptuous and improper for us to interject our judgment as to how this should have been handled. Although the films could have been excluded on the basis of the pretrial order, such a ruling was neither mandated nor required.

Moreover, the remedy for coping with surprise is not to seek reversal after an unfavorable verdict, but a request for · continuance at the time the surprise occurs. No such request was made here, undoubtedly because a continuance was not needed. The voir dire of the films took place three days before they were shown to the jury. Plaintiff's counsel had adequate time for rebuttal preparation. Plaintiff's expert was present during the voir dire and there was extensive cross-examination of defendant's expert. The record shows that plaintiff's counsel and expert witness used the voir dire information and time lag advantageously. The jury cross-examination of defendant's expert was thorough and comprehensive and the rebuttal testimony of plaintiff's expert showed a thorough grasp of the subject matter. In fact, plaintiff's expert testified that the films reinforced his theory of the accident.

The purported use of the films may initially have come as a surprise to plaintiff's counsel but because of the exemplary manner in which the district court handled the situation, the element of unfair surprise was entirely eliminated.

*Affirmed.* Costs to appellees.