George B. JORDAN

v.

GENERAL MOTORS CORPORATION.

Civ. A. No. 82–1682.

United States District Court,
E.D. Louisiana.

July 18, 1985.

Wiedemann & Fransen, Lawrence D. Wiedemann, New Orleans, La., for plaintiffs.

Stephen K. Conroy, Bernard, Cassisa, Babst & Saporito, Metairie, La., for defendants.

## ORDER

ARCENEAUX, District Judge.

This matter is before the Court on General Motors Corporation's (GMC) objections to the Magistrate's Report and Recommendation. GMC objects only to the Magistrate's recommendation that plaintiff be allowed to present his claim under both a products liability theory and a redhibition theory, claiming this will result in prejudice to GMC and inconsistent responses to jury interrogatories. The Court does not agree this will result and the plaintiff is clearly entitled to proceed under both theories.

Accordingly,

IT IS ORDERED that the Magistrate's Report and Recommendation is hereby adopted as the opinion of this Court.

## REPORT AND RECOMMENDATION

### July 16, 1985

MICHAELLE PITARD WYNNE, United States Magistrate.

#### Statement of the Case

The captioned matter involves a claim for personal injuries filed by George B. Jordan against General Motors Corporation.

On or about March 20, 1982, Jordan, while driving his 1981 4-door Oldsmobile Omega, was travelling on Williams Blvd., Kenner, La. when another vehicle crossed his lane of traffic. Jordan, swerving to avoid hitting this vehicle, hit the bumper of a car slowing down for a red light. According to Jordan, his seat moved, on impact or prior to impact, causing his body to move forward and his head to impact with the sun visor. Jordan asserts that, because of defective design and/or manufacture, the retaining pin used to attach the front seat to the floor runner failed to properly keep the seat stationary.

Jurisdiction is founded on diversity of citizenship and Plaintiff's action is based on Louisiana law.

#### Status of the Case

A pretrial conference was held before Judge Arceneaux on December 13, 1984, after which the trial was continued to be reset. As a result of discussions at the conference relative to certain evidentiary motions and issues, Judge Arceneaux stayed discovery and directed the undersigned Magistrate to issue a report and recommendation addressing the evidentiary issues in contest. A conference was held before the Magistrate on January 16, 1985. Because it appeared that an evidentiary hearing was necessary, the Magistrate set a hearing for March 13, 1985. At the re-

quest of the parties, the hearing was continued until April 12, 1985 at which time evidence was offered by way of affidavit only. Additional time to file supplemental briefs was granted at the request of the parties and the matter was submitted.

### Statement of the Issues

As reflected by Judge Arceneaux's referral order, seven separate evidentiary issues were referred to the Magistrate; i.e.

(1) the admissibility and legal effect of plaintiff's alleged failure to use seatbelts;

(2) the admissibility of evidence as to the design "state of the art";

(3) the admissibility of evidence on the relative severity of plaintiff's injury;

(4) the plaintiff's right to submit to the jury three theories of recovery i.e. products liability, redhibition and negligence, and how this right may be affected by defendant's proposed stipulation that if the plaintiff recovers under a products liability theory he will be deemed to also recover under redhibition;

(5) the admissibility of a campaign bulletin recalling certain vehicles;

(6) the admissibility of a computer print out of the National Highway Traffic and Safety Administration, and depositions of nonparties both relating to allegedly similar defects;

(7) the admissibility of films of "crash tests" conducted by defendant.

### Issues Amicably Resolved

Prior to the hearing, the parties reached an agreement, outlined below, as to certain of the issues; the remaining issues are in contest and form the basis of this report and recommendation.

a) Issue No. 2—State of the Art Evidence

The Defendant, General Motors, contends that a vehicle design should be judged as to reasonable safe design based on the knowledge available at the time of the vehicle design and manufacture. The parties agree that the parties, in particular the Defendant, may introduce evidence as to the state of the art in the industry at the time of vehicle design and/or manufacture. Included in such evidence is evidence of the custom of the industry at the time. The parties agree that evidence of subsequent design changes based on experience, development, and advanced technology is not admissible.

b) Issue No. 3—Admissibility of Evidence on the Relative Severity of Plaintiff's Injury

The parties agree that no evidence should be allowed which relates to the severity of the injury sustained by Mr. Jordan as compared with injuries received by other persons involved in other accidents where the vehicle was travelling at a rate of comparable speed.

c) Issue No. 6(a)—Admissibility of Evidence of NHTSA Computer Printouts

The parties agree that the computer printout of the National Highway Traffic & Safety Administration is inadmissible.

### Contested Issues

a) Issue No. 1—Seat Belt Defense

It is uncontested, as a matter of fact, that seat belts were installed in the vehicle being driven by the Plaintiff; however, the seat belts were not in use at the time of the incident in question.

The Plaintiff contends that the 1981 Oldsmobile was defective in its design because there was:

"... the absence of a *slot* for the locking bar at the rear of the seat track on the driver's side which allowed the locking bar to remain in an unlocked position when the seat was in its backward most position and insufficient width in the locking slots to permit full penetration of the locking bar. The manufacturing defects consisted in the utilization of equipment or technique which allowed for a variance in the size and width of the *locking slots*, or manufacturing the *slots* out of tolerance specified in design draw-

ings, which prevented a full penetration of the locking bar. The lack of crashworthiness arose out of the aforesaid design and manufacturing defects which compromised the integrity of the locking bar and permitted the nipple thereof to distort in a low speed collision (15 m.p.h.) which establishes the inadequacy of the seat adjuster assembly under Title 49 Sec. 541.207, Code of Federal Regulations."

Because of these defects the Plaintiff asserts that the seat moved forward causing Plaintiff to be propelled and hit his head resulting in his severe injuries.

General Motors denies that any defect in design or manufacture existed. General Motors further asserts that the movement of the seat, if it did in fact occur, did not have any effect on Mr. Jordan's movement off the seat. General Motors asserts that seat belts are an integral part of its overall vehicle safety design and urges that if Mr. Jordan had been wearing the seat belt his injury would have either been substantially reduced or eliminated. General Motors wishes to introduce evidence that (1) the vehicle was equiped with seat belts, (2) Mr. Jordan was not using the seat belts, and (3) the failure to use the seat belts caused or contributed to Jordan's injuries. General Motors wishes to argue the seat belt defense and have same presented to the jury.

Introduction of Evidence and Jury Instructions relative to Jordan's failure to use seat belts for the purpose of asserting the defense of contributory negligence and/or comparative fault

It is clear that the doctrine of contributory negligence does not apply; however, the law is unclear as to whether the Defendant may reduce recovery by asserting the comparative fault of Jordan, *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985); *Benson v. Seagraves,* 445 So.2d 187 (La. 3rd Cir., 1984). Because of the state of development of the law, the Defendant, General Motors Corporation, has acknowledged that it will not attempt to introduce evidence or request jury instructions relative to Jordan's failure to use seat belts as constituting either contributory negligence or comparative fault.

Introduction of Evidence of Jordan's failure to use seat belts in order to prove (1) the overall safety design of the vehicle, (2) Jordan's assumption of risk, and (3) mitigation of damages.

(1) Overall safety design of the vehicle

Because the Plaintiff is attacking the design of the Oldsmobile in question, the Defendant may introduce evidence as to the availability of seat belts in determining whether the Oldsmobile, as designed, was unreasonably unsafe, *Hermann v. General Motors Corporation,* 720 F.2d 414 (1983); *McElroy v. Allstate Insurance Company,* 420 F.2d 214 (La. 4th Cir.1982).

(2) Assumption of Risk

Pursuant to Louisiana law, assumption of the risk, as a defense to strict liability assertions in a product case, is applicable when the tort victim voluntarily and unreasonably used a product with full knowledge of its defect and the danger involved, *Verrett v. Cameron Telephone Co.,* 417 So.2d 1319 (La. 3rd Cir.1982). "[A]ssumption of risk involves 'first, knowledge and appreciation of a danger, and second, a voluntary encountering of it.' " *Bell v. Jet Wheel Blast,* 709 F.2d 6, 7 (5th Cir.1983); *Rodrigue v. Dixilyn Corp.,* 620 F.2d 537 (5th Cir.1980).

After review of the memorandum of the parties and argument, the undersigned Magistrate cannot conceive of any logical connection between Jordan's failure to use seat belts and the assumption of risk defense. The Defendant contends that Jordan's movement off the seat was not caused by the alleged upward movement of the seat. It appears that the Defendant is contending that had Jordan used seat belts then he would not have lifted off the seat; however, this contention goes to the heart of contributory negligence or comparative fault, which the Defendant contends he is not asserting, and does not have any relevance to an assumption of the risk defense.

### (3) Mitigation of Damages

The Defendant proposes the theory that it should be allowed to introduce evidence of the failure of Jordan to utilize seat belts to mitigate damages. In support of this theory, General Motors cites *Caiazzo v. Volkswagenwerk, A.G.*, 468 F.Supp. 593 (E.D.N.Y.1979), affirmed 647 F.2d 241 (2nd Cir.1981).

■ General Motors submits that the instant case is a crashworthiness case in which the alleged product defect is alleged either to cause or enhance the Plaintiff's injuries, but did not cause the actual accident. Under the doctrine of crashworthiness, "a manufacturer is liable only for 'enhancement' damages comprised of 'that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design,' " *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985).

It appears that General Motors is asserting that the Plaintiff's injuries would have occurred regardless of whether or not the Plaintiff's seat was defective. General Motors further wishes to establish that if the Plaintiff had been wearing seat belts the injury would not have occurred. Although the Magistrate could not locate any Louisiana cases directly on point, it appears that General Motors does have the right to introduce this evidence as it relates to causation of injury and the Plaintiff's duty to mitigate his damages.

### b) Issue No. 4—Plaintiff's right to submit to the jury three theories of recovery, i.e (1) products liability, redhibition and negligence in view of Defendants' stipulation that if the Plaintiff recovers under a products liability theory he will be deemed to have also recovered under redhibition

From a review of the Plaintiff's opposition to the motion in liminae, it appears that the Plaintiff does not intend to pursue a negligence claim but rather wishes to pursue a claim based on products liability and redhibition. However, in the event that the Plaintiff may wish to pursue a claim for negligence in addition to his claim for product liability, it is the Magistrate's opinion that the Plaintiff should be limited to pursuing a cause of action based on product liability.

In order to recover under a strict products liability theory, the Plaintiff is required to show "(1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the control of the manufacturer.", *Bell v. Jet Wheel Blast*, 462 So.2d 166, 168 (La.1985)

It is now well settled that in a products case "[I]f the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacturing or processing.", *Weber v. Fidelity & Casualty Insurance Company of New York*, 259 La. 599, 250 So.2d 754 (La.1971); *Bell v. Jet Wheel Blast, Div. of Erwin Ind.*, 462 So.2d 166, 168 (La.1985).

■ Consequently, it is obvious that to succeed in a negligence case rather than a strict products case the Plaintiff has a more strenuous burden of proving that the manufacturer knew of the vices in his product or that a reasonable man would have known of the vices. The standard in a products case is clearly lesser than a negligence case and the allowable damages are the same. Because one theory of recovery encompasses the other theory of recovery and the type of allowable recovery is identical, there is no logical reason to present confusing evidence and confusing interrogatories to the jury, *City of Jackson, Miss. v. Filtrol Corp.*, 624 F.2d 1384 (5th Cir. 1980). It is the recommendation of the Magistrate that the Court grant the Defendant's motion to limit the Plaintiff from presenting a cause of action based on negligence.

■ The Plaintiff, however, has the right to pursue a claim against the manu-

facturer based both in tort as well as redhibition, *Storey v. Lambert's Limbs & Braces, Inc.*, 426 So.2d 676, 678 (La.1982); *Philippe v. Browning Arms Co.*, 395 So.2d 310 (La.1980).

The Defendant, alternatively, has suggested that if the Court allow the Plaintiff to proceed with a redhibition theory, that the redhibition cause of action be severed. While the elements of proof in these two causes of action differ, the facts in support of such proof can easily overlap. Further, although the Defendant generally asserts prejudice and confusion if the two causes of action are tried together, he has not sufficiently shown to the Court reasons to believe that such prejudice and confusion will actually occur. It is accordingly recommended that the motion of the Defendant to exclude the Plaintiff from proceeding with a cause of action based on redhibition be denied, and, further, that Defendant's motion to sever be denied.

c) Issue No. 5—Admissibility of Campaign Bulletin

In approximately March of 1979, General Motors Corporation engaged in recall campaign 80C02. The campaign pertained to inspection of certain vehicles assembled prior to February 5, 1979. Approximately 2600 vehicles were reinspected which resulted in the discovery of 53 vehicles which needed seat adjustment replacement. None of the vehicles requiring replacement were in the hands of customers. The problem necessitating the recall campaign dealt with the lock bar in the front seat adjuster assemblies failing to engage satisfactorily due to a clearance discrepancy. The clearance discrepancy involved the rectangular opening in the outer-upper track of the seat adjustment.

In the subject case, the design and/or manufacturing defect of the seat adjustment system, asserted by the Plaintiff, deals with the lower-inner track and the size or shape of the "nipple." While the Plaintiff argues that the seat assembly system utilized in the 1980 Oldsmobile Omega model is the same as the system used in the 1981 Oldsmobile Omega model, the recall campaign was only directed to certain General Motors vehicles manufactured prior to February 5, 1979. The 1981 Oldsmobile Omega involved in this case was not built until May of 1981.

Although this matter is a diversity case, the Federal Rules of Evidence govern the admissibility of evidence, *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir.1981). Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Because the recall campaign dealt with a different model year and because the defect involved in the recall campaign is distinctly different from the defect alleged in this case and involved a different section of seat assembly, it appears that introduction of evidence dealing with the recall campaign is not relevant. Further, even if such evidence could be broadly construed as constituting relevant evidence the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and the possibility of misleading the jury, Federal Rules of Evidence, Rule 403.

d) Issue No. 6(b)—Admissibility of depositions relating to allegedly similar defects

The Plaintiff wishes to use the deposition testimony of Messrs. Kolzow, Norseth, Ladra and Mr. & Mrs. Robert Amiss in order to prove similar defect, trajectory of Plaintiff's body, cause of the trajectory, and to show that the trajectory would have been the same or similar whether or not the Plaintiff used the seat belt.

If evidence of similar accidents is relevant then the evidence may be admitted, *Ramos v. Liberty Mutual Insurance*, 615 F.2d 334 (5th Cir.1980). Evidence of prior similar accidents is generally admissible to prove the defendant's knowledge of the dangerous situation, "magnitude of the

danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation," *Ramos,* supra at 338–339. Because the evidence of similar accidents "draws its relevance from the principle that similar causes can be expected to produce similar effects, admissibility ... hinges upon demonstration that conditions had been substantially similar on all occasions," *Tug Ocean Prince, Inc. v. United States,* 436 F.Supp. 907 (S.D.N.Y., 1977). The Court's initial inquiry should be directed as to whether the incidents involving the deposition testimonies of Messrs. Kolzaw, Norseth, Ladra, and Mr. & Mrs. Amiss were similar to the incident made the basis of this suit. The Magistrate has accordingly read these depositions and the deposition of the Plaintiff.

Mr. Kolzow owns a 1980 Oldsmobile Omega. According to Mr. Kolzow, he had a problem with the passenger side of the front seat which jiggled.

Mr. Norseth owned a 1980 Chevrolet Citation. In 1980, Mr. Norseth was involved in an accident when his car left the highway while he, traveling in the 50–60 m.p.h. range, landed on all four wheels in a bar pit and travelled on the bar pit for a couple of hundred feet and flew into a large ditch and landed with his front end lodged in the ditch. Mr. Norseth's seats, front and back, dislocated.

Mr. Ladra owns a 1980 Buick Skylark. His complaint with the seat adjustment system is that he needed two people to move the front seat—one on the passenger side and one on the driver's side, and that he needed to "jiggle" the seat to lock it.

Mrs. Amiss, while driving a 1980 Buick Skylark, was involved in an accident on October 29, 1980 when a second vehicle hit her stopped vehicle at an impact rate of approximately 50–60 m.p.h. The other vehicle was a small General Motors sports car which went under the Buick Skylark and tore the bottom of the Skylark apart. As a result, the Skylark was demolished and the front seat adjuster lever was de-formed and bent, allowing the seat to move freely.

In the opinion of the Magistrate, these other incidents, resulting damage, and problems relating to the seat adjustment system are so dissimilar to the facts given relating to this case that the evidence should be excluded as irrelevant.

e) Issue No. 7—Admissibility of "Crash Test" films

George Jordan asserts that the failure of the seat assembly caused him to leave his seat and strike his head on the sun visor. General Motors takes the position that the seat did not move forward but, even if it did, the trajectory of Mr. Jordan during the accident was unaffected by the seat movement.

In support of its position, General Motors produced a video tape of four tests of crashes and the effects of these "accidents" on a dummy driver. General Motors, through the deposition of Kenneth Orlowski, a Senior Staff Analysis Engineer for General Motors, has produced evidence reflecting that the four tests were run at the same speed to simulate the 15 mile per hour impact of the Jordan accident using a male dummy to reproduce Jordan's height and weight, and placed in a position similar to Jordan's position at the time of the accident. The tests involved the following situations:

| | OCCUPANT | SEAT ADJUSTER ASSEMBLY |
|---|---|---|
| 1. | Unrestrained | Locked |
| 2. | Restrained with lap and shoulder safety belts | Locked |
| 3. | Unrestrained | Not engaged |
| 4. | Restrained | Not engaged |

According to General Motors, the tests show that even if the Jordan seat had been firmly locked the trajectory of the Plaintiff would have been the same as the trajectory Jordan underwent at the time of his impact with the sun visor.

The Plaintiff objects to the introduction of this film for the reason that the tests can not and do not accurately duplicate the Jordan impact.

The Eighth Circuit in *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir.1969) succinctly set forth the applicable law as follows:

> Admissibility of evidence depends upon a foundational showing of substantial similarity between the tests conducted and actual conditions. See, *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 704 (8th Cir.1967); *Gillam v. J.C. Penney Co.*, 341 F.2d 457, 460 (7th Cir.1965); *Larson v. Meyer*, 161 N.W.2d 165 (N.D.1968); *Crecelius v. Gamble-Skogmo, Inc.*, 144 Neb. 394, 397, 13 N.W.2d 627 (1944). Perfect identity between experimental and actual conditions is neither attainable nor required. *Lobel v. American Airlines*, 205 F.2d 927, 931 (2d Cir.1953). Dissimilarities effect the weight of the evidence, not admissibility. See, *Lever Bros. Co. v. Atlas Assur. Co.*, 131 F.2d 770 (7th Cir.1942). Finally, the decision whether to admit or exclude evidence of experiments in a particular case rests largely in the discretion of the trial judge and his decision will not be overturned on appeal absent a clear showing of an abuse of discretion. See, e.g., *Skogen v. Dow Chemical Co.*, supra; *Ripp v. Riesland*, 180 Neb. 205, 141 N.W.2d 840 (1966); *Reizenstein v. State*, 165 Neb. 865, 87 N.W.2d 560 (1958); *Crecelius v. Gamble-Skogmo, Inc.*, supra. See also *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985).

The burden rests on General Motors at trial to lay a proper foundation demonstrating a similarity of circumstances and conditions, *Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir.1977). While it is not necessary for General Motors to precisely reproduce all factors existing at the time of the Jordan instance, it is necessary that General Motors reproduce the conditions "in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed," *Barnes*, supra at 277.

While the admission of the "crash test" films is clearly within the Court's discretion, *Szeliga v. General Motors Corp.*, 728 F.2d 566 (5th Cir.1984), it is recommended that if General Motors lay the proper foundation at trial that the Court admit the "crash test" into evidence, *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir. 1985).