Mary VERZWYVELT and
Steven Verzwyvelt, Jr.

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY and Great Ameri-
can Insurance Company.

Civ. A. No. 99–2364.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Sept. 27, 2001.

G. William Jarman, Shannan Sweeney Rieger, Mathile W. Abramson, Gayla M. Moncla, Linda G. Rodrigue, Kean Miller, Hawthorne Darmond McCowan & Jarman, Baton Rouge, LA, for Mary Verzwyvelt, plaintiffs.

Daniel J. Balhoff, John W. Perry, Jr., Robert J. Burns, Jr., Atkinson Perry Atkinson & Balhoff LLC, Baton Rouge, LA, James K. Carroll, Richard A. Fraser, III, Pamela L. Schultz, Gelpi Sullivan, Carroll & Gibbens PLC, New Orleans, LA, for defendants.

## MEMORANDUM RULING

LITTLE, Chief Judge.

Before this court are two Motions in Limine [Docs. No. 41 & 48] filed by defendant Great American Insurance Company ("Great American"). The first Motion in Limine requests that we exclude certain portions of the testimony of plaintiffs' expert witness, Dr. George McCormick III ("McCormick"): (1) that the bacteria Listeria Mononcytogen ("Listeria") more probably than not resulted in the death of Mr. Steven Verzwyvelt ("Verzwyvelt"); and (2) that Verzwyvelt suffered from an underlying hematological malignancy, which contributed to Verzwyvelt's death. Defendants assert that both statements are prohibited expert testimony under Federal Rules of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Plaintiffs filed an opposition to this motion, defendants replied, and plaintiffs filed a supplemental memorandum in opposition. The second Motion in Limine requests that the court proscribe the plaintiffs from offering into evidence any reference of Thorn Apple Valley, Inc.'s ("TAV") recall of hot dog or luncheon meat combination kits at its Forrest City, Arkansas plant or subsequent closure of TAV's Forrest City, Arkansas food processing plant. Here, the defendants rely on Rules 401 and 403 of the Federal Rules of Evidence ("FRE"). Plaintiffs filed an opposition to this motion, defendants replied, and plaintiffs filed a supplemental memorandum in opposition. For the following reasons, we GRANT both motions.

## I. FACTUAL BACKGROUND

At its foundation, this action is a products liability suit involving a sausage meat product manufactured by TAV allegedly contaminated with Listeria, which Verzwy-

velt later consumed. Plaintiffs maintain the following pertinent facts: While at home in early December 1998, Verzwyvelt ate a TAV sausage meat product, which Verzwyvelt's wife purchased at a Wal-Mart store located in Caddo Parish, Louisiana, which is where Verzwyvelt lived. As a result of eating the meat product, Verzwyvelt became ill, suffering from, among other maladies, severe abdominal pain, nausea, vomiting, and headaches. On 10 December 1998, after approximately one week of severe sickness, Verzwyvelt's family rushed Verzwyvelt to the emergency room of a hospital in Natchitoches, Louisiana. Shortly after arrival at the hospital, Verzwyvelt suffered a cardiac arrest; and despite efforts to revive him, Verzwyvelt died.

Soon after Verzwyvelt's death in December 1998, McCormick, the coroner of Caddo Parish, Louisiana, conducted an autopsy on the decedent according to well-accepted, scientific techniques. At that time, McCormick concluded that, more probably than not, Verzwyvelt died from a bacterial infection, but McCormick did not know the type or nature of the bacterial infection. During the autopsy, McCormick did not test for the Listeria bacteria. Shortly after the autopsy, Verzwyvelt was buried. Defendants do not contest McCormick's ability to testify as to the scientific validity of the actual autopsy or that Verzwyvelt died from an unknown bacterial infection. No party, prior to burial, connected Verzwyvelt's death to the alleged contaminated sausage meat product manufactured by TAV.

TAV operates different meat processing plants throughout the United States. On 31 December 1998, the United States Department of Agriculture ("USDA") suspended TAV's meat processing activities at its Forrest City, Arkansas plant; the plant never reopened after the suspension. Furthermore, on 22 January 1999, TAV recalled hot dog and luncheon meat combination kits manufactured between 6 July and 30 Dec 1998; the recall applied only to products manufactured at its Forrest City, Arkansas processing plant. TAV produced the sausage that Verzwyvelt consumed at its Grand Rapids, Michigan plant, but the USDA never suspended operations nor did TAV ever recall any meat products manufactured from this plant.

In late January 1999, but before McCormick filed his final autopsy report, McCormick received a telephone call from the decedent's wife. Mrs. Verzwyvelt informed McCormick that she had read an article in the Alexandria Town Talk newspaper concerning a recall that had been issued for certain meat products manufactured by TAV at its Forrest City, Arkansas plant. The article indicated that the recall may have been the result of contamination with the bacteria Listeria, and the article enumerated a number of symptoms that someone who consumed meat contaminated with Listeria could suffer. Mrs. Verzwyvelt relayed to McCormick that the symptoms experienced by her husband were similar to the symptoms described in the newspaper article. Furthermore, Mrs. Verzwyvelt informed McCormick that she had purchased two packages of sausage manufactured by TAV; Verzwyvelt had already eaten the contents of one package, but an unopened package of sausage remained in Mrs. Verzwyvelt's freezer. McCormick arranged to pick up the unopened package and have it tested for the bacteria Listeria. According to plaintiffs, this package of sausage did test positive for Listeria. Further, McCormick had, while performing the autopsy, retained tissue samples from the decedent's body.

On the basis of the information provided by Mrs. Verzwyvelt, McCormick located and studied literature concerning Listeria and the infection it causes, known as listeriosis, in order to familiarize himself with

this type of bacterial infection. Subsequently, McCormick contacted the Centers for Disease Control ("CDC") in Atlanta, Georgia and asked the CDC to run tests on tissue samples from decedent's body in order to check for the Listeria bacteria. The CDC informed McCormick that if McCormick could not supply gastrointestinal tissue for testing, it would not be worth testing the other tissues for Listeria. Nevertheless, McCormick, having no gastrointestinal tissue from Verzwyvelt, sent to the CDC tissue from the decedent's lung, liver, and spleen. After testing, however, the CDC failed to find any trace of Listeria from the samples sent by McCormick.

Further, on the basis of the initial examination of decedent's body, McCormick hypothesized that Verzwyvelt may have had an underlying hematological malignancy. In an effort to verify his hypothesis, McCormick sent tissue samples to Dr. Robert McKenna ("McKenna"), the co-director of the division of hematology and immunology at Southwest Medical Center in Dallas, Texas, to test for any hematological malignancy. McKenna tested the tissue, but was unable to identify definitely any evidence of a hematological malignancy or render a definitive diagnosis required for a fatal Listeria infection.

On the basis of the testing of the unopened sausage package, CDC results, and McKenna information, McCormick, in his final autopsy report issued in May 1999, concluded the following: (1) Verzwyvelt had an underlying hematological neoplasm; and (2) Verzwyvelt died from an overwhelming bacterial infection, more probably than not caused by Listeria.

## II. LAW AND ANALYSIS

1. *Motion in Limine to Exclude Proposed Testimony of Dr. McCormick*

Plaintiffs intend to use the testimony of McCormick to establish that Verzwyvelt more probably than not died from listeriosis, which resulted from ingesting the bacteria Listeria, and that Verzwyvelt had an underlying hematological malignancy or neoplasm, which placed Verzwyvelt at a greater risk for developing listeriosis. McCormick obtained a Bachelor of Science degree, with a major in biology, in 1961, a Ph.D. in physiology and biophysics in 1965, and an M.D. in 1969. Additionally, McCormick is board certified in the State of Louisiana in forensic pathology; qualified as an expert witness in forensic pathology in federal court in the following states: Louisiana, Texas, Mississippi, and Arkansas; testified on numerous occasions as an expert forensic pathologist, and currently serves as the Coroner for Caddo Parish, Louisiana. Moreover, McCormick has published many articles on a diverse spectrum of medically-related topics, but none on Listeria, listeriosis, or hematological disorders.

Defendants contend that McCormick's opinions relating to listeriosis as being the probable cause of decedent's death and any underlying hematological condition the decedent may have suffered from are unreliable under FRE 702 and *Daubert.* Defendants recognize that McCormick is a physician and board certified forensic pathologist with impressive educational and professional backgrounds. McCormick, however, concedes that he never performed or conducted any of the following activities: (1) investigated a case involving listeriosis; (2) never testified in a listeriosis case; (3) never performed any studies or received any grants to study Listeria; or (4) never written any research papers relating to the Listeria bacteria or its affect on the body. Furthermore, McCormick has admitted that he is not an expert on listeriosis itself or as the cause of death in this case. McCormick also acknowledged that he is not an expert in the field of hematology. Moreover, McCormick con-

cedes that he performed no test for Listeria or found any evidence of Listeria in the decedent's body during the autopsy. Also, the CDC failed to detect any trace of Listeria in tissue supplied by McCormick and McKenna could not render a definitive diagnosis related to Verzwyvelt possibly suffering from any sort of a hematological malignancy.

Defendants maintain, therefore, that McCormick should not be allowed to offer testimony related to two (2) propositions: (1) that Verzwyvelt, more probably than not, died from a bacterial infection known as listeriosis; and (2) Verzwyvelt suffered from an underlying hematological malignancy, which may have contributed to his demise of listeriosis.

Conversely, plaintiffs maintain that even though McCormick has admitted that he is not an expert in Listeria infections or in the subfield of hematopathology, he is an expert in forensic pathology, with substantial qualifications, whose job it is to be a medical detective and determine the pathogenesis of a disease; i.e., cause and manner of death. Plaintiffs argue that under Rule 703 of the FRE, this court should permit McCormick to rely on evidence supplied from outside sources, like Mrs. Verzwyvelt, the unopened package of sausage, the CDC, and McKenna, to form and testify as to his expert opinion. Also, plaintiffs stress that the court should not require McCormick to be an expert in every area of medicine. Thus, plaintiffs exhort that the court admit McCormick's testimony concerning listeriosis as being the probable cause of decedent's death. Similarly, plaintiffs ask this court to permit McCormick to testify about any underlying hematological disorder the decedent may have suffered and allow the jury to determine the weight to be allocated to his opinion in both areas outlined above.

Again, defendants do not challenge McCormick's qualifications or expertise to tender an opinion as a forensic pathologist that Verzwyvelt died from an overwhelming bacterial infection, or McCormick's methodology used during the autopsy. Rather, defendants challenge McCormick's qualifications to testify as an expert regarding listeriosis as being the more probably than not cause of decedent's death and underlying hematological disorder because McCormick's opinions do not meet the necessary legal standards set forth in FRE 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). We agree.

In *Daubert*, the Court overruled the well-known case on admissibility of scientific expert testimony, *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), which had held that expert testimony is inadmissible unless it is based on a scientific technique which is "generally accepted" as reliable in the relevant scientific community. *Daubert* held that under Rule 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795. The Supreme Court has attempted to flesh out the Daubert framework in subsequent decisions by expanding the doctrinal basis underlying *Daubert's* reliability/relevancy approach.

In late 1997, the Court decided *General Elec. Co. v. Joiner*[1], which involved a claim by a worker for an alleged illness stemming from toxic exposure. The trial judge in *Joiner* denied admissibility to the plaintiff's expert's conclusion of causation because it was based, in part, on extrapolation from animal studies. The Eleventh Circuit Court of Appeals reversed, noting that the FRE demonstrate a preference for admissibility and, thus, require "a

1. 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

stringent standard of review." *Joiner v. General Elec. Co.*, 78 F.3d 524, 529 (11th Cir.1996). In reversing the court of appeals, the Supreme Court aligned itself strongly on the side of the trial judge by mandating that evidentiary rulings made at trial be reviewed under an abuse of discretion standard. *See Joiner*, 522 U.S. at 146, 118 S.Ct. 512. Moreover, the Court explicitly extended the reach of this standard to the trial court's acceptance, or rejection, of both the methodology *and conclusions* (emphasis added) of the expert, noting that "conclusions and methodology are not entirely distinct from one another." *See id.* Additionally, the Court stated that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data by the *ipse dixit* of the expert." *Id.* Finally, under *Joiner*, a court may conclude that "there is simply too great an analytical gap between the data and the opinion proffered." *Id.* We find *Daubert* and *Joiner* especially instructive in this case.

The *Daubert* court noted that Rule 702 allows expert scientific testimony when "scientific knowledge" will assist the trier of fact. *See Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795. The Court also stated that "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., 'good grounds' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590, 113 S.Ct. at 2795.

■ In order to furnish some guidance as to whether proposed testimony will pertain to "scientific knowledge," the *Daubert* court established a non-exclusive list of criteria for admissibility of expert witnesses. The *Daubert* factors are as fol-

lows: (1) whether the expert's theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir.1998) (citing *Daubert*, 509 U.S. at 593–95, 113 S.Ct. at 2796–97 (1993)). The burden is on the proponent of the expert to prove by a preponderance of the evidence that the testimony of the expert is reliable. *See Moore*, 151 F.3d at 276.

■ The Fifth Circuit likewise notes that a district judge must undertake a two-part determination, of which both elements must be satisfied when determining whether to admit expert testimony: (1) whether the proffered testimony is reliable, which requires an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid (the *Daubert* principles); and (2) whether the testimony is relevant. *See Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir.1999) (citing *Daubert*, 509 U.S. at 592–93, 113 S.Ct. at 2786).

■ Here, plaintiff does not satisfy the threshold *Daubert* requirements for McCormick's expert testimony. McCormick concedes that he has little or no scientific knowledge concerning listeria, listeria infections, or the subfield of hematopathology. He did not find evidence of listeria in decedent's body at the time of autopsy and performed no tests related to listeria. Furthermore, even when McCormick sent body tissue to the CDC for analysis, the CDC failed to detect any evidence of listeria. Similarly, McKenna failed to supply McCormick with a definitive diagnosis of Verzwyvelt suffering from

an underlying hematological malignancy. With the exception of the results of plaintiff's testing of the unopened packet of sausage, McCormick's opinions related to Listeria infections and hematological malignancy have no evidentiary, scientific basis. Rather, McCormick's proposed testimony attempts to bridge too great of an analytical gap between the data and the proposed opinion. *See Joiner,* 522 U.S. at 146, 118 S.Ct. 512. Plaintiffs' reliance on FRE 703 is misplaced. Rule 703 requires the relied upon experts to produce or submit information that can also be tested and verified. Here, the CDC and McKenna produced nothing of the sort.

Conversely, if the CDC had found evidence of Listeria in tissue samples from the decedent, which could have been further tested and examined by other, independent sources; or, if McKenna had been able to submit a definitive diagnosis, which likewise could have been subject to further, scientific validation, then the plaintiffs may have been able to establish the requisite, scientific foundation under *Daubert* and its progeny. Lacking either, however, McCormick's proposed testimony is not sufficiently based in "scientific knowledge" to qualify for legal, evidentiary purposes.

■ The Fifth Circuit has instructed that expert opinion, such as the one proffered by McCormick, which lacks a scientific basis, is unreliable and should be excluded. In *Moore,* the Fifth Circuit affirmed the exclusion of the expert's testimony on causation because the lack of scientific foundation made it unreliable. *See Moore,* 151 F.3d at 278–79.

■ Also, under *Daubert,* district courts must function as gatekeepers, permitting only reliable and relevant expert testimony to be presented to the jury. *See Daubert,* 509 U.S. at 590–93, 113 S.Ct. 2786. Before allowing expert testimony to be heard, the district court must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education." *See* Fed.R.Evid. 702. A district court should refuse to allow an expert witness to testify in a particular field if it finds that witness is not qualified to testify in a particular field or on a given subject. *See Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir.1999). Here, McCormick concedes that his is not an expert in either Listeria, listeriosis, or hematologic malignancy. Before a district court admits expert testimony, it is required to evaluate the testimony to ensure that it is both relevant and reliable. *See Tanner v. Westbrook,* 174 F.3d 542, 547 (5th Cir.1999). The issue is whether a particular expert has "sufficient knowledge to assist the jurors in deciding the particular issues . . . ." *See id.* at 548 (quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999)). Additionally, McCormick's testing of the second packet of sausage is not the kind of "scientific knowledge" envisioned under Daubert meant to "assist the trier of fact." *See Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. In other words, a trier of fact does not need an expert to make the connection between the unopened packet of sausage and the packet of sausage consumed by Verzwyvelt.

■ The inquiry authorized by FRE 702 is a flexible one; however, a scientific opinion, to have evidentiary relevance and reliability, must be based on scientifically valid principles. *Moore,* 151 F.3d at 276. While McCormick's methodology for arriving at his final conclusions may be medically sufficient for autopsy purposes, it is not legally sufficient for *Daubert* evidentiary purposes. The Court emphasized that a district court, while acting as a gatekeeper for expert evidence, must evaluate whether there is an adequate "fit" between the data and the opinion prof-

fered. *Id.* This court finds that any opinions offered by McCormick, which relate to Listeria infections as being the more probable than not cause of Verzwyvelt's death or concerning any underlying hematological malignancy the decedent may have suffered, lack the adequate "fit" specified in *Moore* and attempts to bridge too wide of an analytical gap detailed in *Joiner,* thereby making the proffered testimony inconsistent with this court's gatekeeper role under *Daubert* to admit his opinions on these matters.

2. *Motion in Limine to Exclude References to Recall of Meat Products or Closure of Thorn Apple's Forrest City, Arkansas Plant*

Plaintiffs intend to introduce into evidence TAV's recall of its hot dog and luncheon meat combination kits from its Forrest City, Arkansas plant, as well as the USDA's suspension and ultimate closing of the Forrest City plant. Plaintiffs claim that evidence of the product recall and plant closure is relevant under FRE 401 for a number of reasons: (1) to illustrate knowledge and notice to the defendant of a quality control problem; (2) to demonstrate, among other items, the danger involved, the ability of TAV to correct a known defect, show a lack of safety and appropriate standard of care by TAV, and causation; and (3) to establish the link between Mrs. Verzwyvelt and McCormick. Furthermore, plaintiffs stress that introducing evidence of the product recall and plant closure would not be unfairly prejudicial under FRE 403 because even though the products manufactured at Forrest City, Arkansas and Grand Rapids, Michigan are different, the alleged defect is the same; i.e., the presence of Listeria.

Conversely, defendants suggest that introducing evidence of the product recall or plant closure is irrelevant and unfairly prejudicial, which could confuse the issues or mislead the jury as outlined in Rules 401 and 403 of the Federal Rules of Evidence. We agree.

▮ Under the FRE, admissibility is predicated on more than just logical relevance; rather, legal relevance is paramount: "Although relevant, evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence." Fed. R.Evid. 403. In determining legal relevance under Rule 403, the trial judge has broad discretion and is authorized to balance the probative value of the evidence against its prejudicial effect. *See United States v. Johnson,* 558 F.2d 744 (5th Cir.); *see also United States v. Maceo,* 947 F.2d 1191 (5th Cir.1991). Here, the plaintiffs concede that no evidence exists, which suggests that TAV manufactured sausages at its Forrest City, Arkansas plant. The recall, therefore, involved an entirely different product, manufactured at an entirely different manufacturing facility, located at opposite ends of the country. Evidence of a manufacturing recall campaign, which dealt with different model year automobiles was not relevant in a products liability action. *See Jordan v. General Motors Corp.,* 624 F.Supp. 72, 77 (E.D.La.1985). In *Jordan,* the court also held that even if such evidence could be "broadly construed as relevant evidence, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and the possibility of misleading the jury." *See id.* Unfair prejudice, under FRE 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *See* Fed. R.Evid. 403 advisory committee's note. Similar to the manufacturer in *Jordan,* TAV will be unfairly prejudiced and the jury confused or mislead if the plaintiff is permitted to parade before the jury evi-

dence of a product recall and plant closure of a different product, manufactured at a different site from the allegedly consumed sausage. Such evidence may carry great weight and may be viewed by the jury as convincing proof that the product was defective.

Because any probative value that the evidence might have is substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury, we hold that evidence which references TAV's hot dog and luncheon meat combination kit recall or Forrest City, Arkansas plant closure is inadmissible under Rules 401 and 403 of the Federal Rules of Evidence.

### III. CONCLUSION

For written reasons given this date, defendants' motions in limine [Doc. Nos. 41 & 48] are GRANTED. The expert report or testimony of Dr. George McCormick III that specifies the following are stricken: (1) that Verzwyvelt died from an overwhelming bacterial infection, more probably than not caused by Listeria; and (2) that Verzwyvelt suffered from an underlying hematological neoplasm, which contributed to his death. Further, plaintiffs' references to TAV's hot dog and luncheon meat combination kit recall or Forrest City, Arkansas plant closure are inadmissible and will be excluded at trial.